JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DREW ZELIKMAN

(b) County of Residence of First Listed Plaintiff ______
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
JOSEPH F. LEESON, III, ESQUIRE
LEESON & LEESON
70 EAST BROAD STREET

## DEFENDANTS

PARKLAND PRESCHOOL, INC. d/b/a THE GODDARD SCHOOL OF CENTER VALLEY

County of Residence of First Listed Defendant ______
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act, 42 U.S.C Sec 23000e et seq and the Pregnant Workers F

Brief description of cause:
Plaintiff is a transgender individual employed as a teacher by Defendant who upon returning from maternity leave was told his position had been fi

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ >$75000

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 10.09.2026

SIGNATURE OF ATTORNEY OF RECORD: Joseph F. Leeson III Esq

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

JS 44 Reverse (Rev. 04/21)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DREW ZELIKMAN,<br><br>Plaintiff,<br><br>v.<br><br>PARKLAND PRESCHOOL, INC. d/b/a THE GODDARD SCHOOL OF CENTER VALLEY,<br><br>Defendant. | CIVIL ACTION NO. ____________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Drew Zelikman, by and through undersigned counsel, files this Complaint against Defendant Parkland Preschool, Inc. d/b/a The Goddard School of Center Valley, and in support alleges as follows:

**I. PRELIMINARY STATEMENT**

1. This is an action for employment discrimination brought by Plaintiff Drew Zelikman, a transgender man who became pregnant while employed as a preschool teacher at The Goddard School in Center Valley, Pennsylvania. When Plaintiff disclosed his pregnancy, Defendant's management learned for the first time that he is transgender. Defendant's treatment of him changed immediately: management turned cold, delayed and brushed off his requests for bathroom breaks, and told him not to tell anyone he was pregnant.

2. This action arises from Defendant's discriminatory treatment of Plaintiff after Defendant learned that Plaintiff—a transgender man and member of the LGBTQ+ community—was pregnant.

3. Plaintiff was hired by Defendant as a preschool teacher and performed his job without incident before disclosing his pregnancy.

4. On September 12, 2025, Plaintiff informed Defendant's management that he was pregnant. That disclosure simultaneously revealed to management, for the first time, that Plaintiff is a transgender man.

5. The disclosure marked a material turning point in Plaintiff's employment.

6. Before September 12, 2025, Plaintiff had not experienced hostility, alienation, or materially different treatment from management or coworkers based upon his sex, gender identity, pregnancy, or sexual orientation.

7. After Defendant learned that Plaintiff was both transgender and pregnant, however, the workplace atmosphere changed markedly. Plaintiff experienced coldness and alienation, encountered resistance when requesting basic pregnancy-related accommodations, and received conflicting and troubling instructions concerning whether he should disclose his pregnancy to others.

8. Plaintiff subsequently developed complications associated with a high-risk pregnancy and, upon his physician's direction, commenced medically necessary maternity leave on or about November 12, 2025.

9. Defendant knew of, approved, and repeatedly acknowledged Plaintiff's leave. Defendant expressly represented to Plaintiff that his employment continued and repeatedly led him to believe that he would return to his teaching position following leave.

10. Indeed, as late as December 4, 2025, Defendant confirmed in writing that Plaintiff remained an employee on "unpaid maternity leave."

11. And on December 19, 2025, while Plaintiff attended a school event during his leave, Defendant's employees and representatives told him, "See you in a few weeks," further

confirming that Defendant expected—or at minimum represented to Plaintiff that it expected—his return.

12. Yet when Plaintiff contacted Defendant on January 2, 2026 to finalize his return-to-work date, Defendant abruptly changed course.

13. On January 5, 2026, Defendant informed Plaintiff that it had filled his position while he was on maternity leave and that no position was available for him.

14. Defendant then failed to meaningfully respond to Plaintiff's request for an explanation.

15. Defendant subsequently attempted to justify its decision by relying upon Plaintiff's separate application for childcare for his infant at an affiliated Goddard School—an application Defendant improperly characterized as an application for employment.

16. That purported justification was false, internally inconsistent, and contrary to Defendant's own contemporaneous communications confirming that Plaintiff remained employed and was merely on maternity leave.

17. Defendant's shifting explanations, the timing of its actions, its treatment of Plaintiff immediately following disclosure of his pregnancy and transgender status, its representations that Plaintiff's position would remain available, and its subsequent refusal to reinstate him support a reasonable inference that Defendant's stated reasons were pretextual and that Plaintiff's pregnancy, sex, transgender status/gender identity, sexual orientation, requests for pregnancy-related accommodations, and/or use of pregnancy-related leave were motivating and unlawful factors in Defendant's treatment of Plaintiff.

18. Through this action, Plaintiff seeks redress for Defendant's unlawful discrimination and retaliation and the economic and non-economic injuries resulting therefrom.

19. Defendant approved Plaintiff's pregnancy-related leave, confirmed his leave status in writing, and repeatedly assured him that his job would be waiting. Yet on January 5, 2026, when Plaintiff asked for his return-to-work date, Defendant told him that his position had been filled and that no position was available.

20. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.* ("PWFA"). He seeks reinstatement, back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and all other appropriate relief.

## II. PARTIES

21. Plaintiff Drew Zelikman is an adult individual residing at 639 Walnut Avenue, Apartment 2, West Easton, Pennsylvania 18042.

22. Plaintiff is a transgender man and a member of the LGBTQ+ community.

23. At all times relevant to this Complaint, Plaintiff was qualified for his position as a preschool teacher and was capable of performing the essential functions of his position, with reasonable accommodation where necessary.

24. Upon information and belief, Defendant Parkland Preschool, Inc. d/b/a The Goddard School of Center Valley ("Defendant" or "Goddard") is a Pennsylvania business corporation with an address of 2180 Spyglass Hill, Center Valley, Pennsylvania 18034. Defendant owns and operates a franchised Goddard School preschool and childcare center located at 3790 West Drive, Center Valley, Lehigh County, Pennsylvania 18034 (the "Center").

25. Upon information and belief, Prabhjot Kalsi and Simardip Kalsi are owners and principals of Defendant, and Alyson M. Parlo Schantzenbach was a member of Defendant's management at the Center during Plaintiff's employment.

26. At all relevant times, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and a "covered entity" within the meaning of 42 U.S.C. § 2000gg(2), in that it employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

27. At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f) and 42 U.S.C. § 2000gg(3).

28. At all relevant times, Defendant acted through its owners, directors, managers, agents, and employees, each of whom acted within the course and scope of their employment or agency with Defendant.

## III. JURISDICTION AND VENUE

29. This Court has subject-matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 2000e-5(f)(3), and 42 U.S.C. § 2000gg-2(a)(1), because this action arises under the laws of the United States.

30. Venue is proper in this District under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b). The unlawful employment practices alleged here were committed in Lehigh County, Pennsylvania; upon information and belief, the employment records relevant to those practices are maintained there; Plaintiff would have continued working there but for those practices; and Defendant resides in this District.

## IV. ADMINISTRATIVE EXHAUSTION

31. On or about January 30, 2026, Plaintiff filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2026-03317, and the charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

32. The Charge alleged discrimination on the basis of sex, gender identity, sexual orientation, and pregnancy in violation of Title VII, including the Pregnancy Discrimination Act, and violations of the PWFA, including Defendant's failure to accommodate Plaintiff and its adverse action against him for requesting pregnancy-related leave.

33. On July 13, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights dismissing the Charge and notifying Plaintiff of his right to sue. A true and correct copy of the Determination and Notice of Rights is attached as **Exhibit A.**

34. Plaintiff files this Complaint within ninety days of his receipt of the Determination and Notice of Rights.

35. Plaintiff has satisfied all administrative prerequisites to bringing his claims under Title VII and the PWFA.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Hiring and Early Employment

36. On July 31, 2025, Defendant extended Plaintiff a written offer of employment as a preschool teacher at the Center.

37. Plaintiff accepted the offer and began working at the Center on August 12, 2025.

38. Plaintiff was qualified for his position and performed his duties satisfactorily. Defendant never disciplined Plaintiff or criticized his job performance.

39. From August 12, 2025 through September 12, 2025, Plaintiff experienced no hostility or differential treatment from Defendant's management or his co-workers.

40. Plaintiff performed his assigned duties as a preschool teacher.

41. Before disclosing his pregnancy, Plaintiff had not experienced the hostility, alienation, resistance to routine needs, or materially adverse treatment that followed the disclosure.

**B. Plaintiff Discloses His Pregnancy, and Defendant Learns He Is Transgender**

42. On September 12, 2025, Plaintiff learned that he was pregnant.

43. That same day, Plaintiff informed all of the Center's directors of his pregnancy.

44. Because Plaintiff is a transgender man, his disclosure of pregnancy also disclosed, or caused management to become aware for the first time, that Plaintiff is transgender.

45. Defendant therefore became aware of two interrelated protected characteristics at essentially the same time: Plaintiff's pregnancy and his transgender status/gender identity.

46. Following that disclosure, Plaintiff observed a marked and adverse change in the manner in which management and coworkers interacted with and treated him.

47. Plaintiff's disclosure was the first time Defendant's management became aware that Plaintiff is a transgender man.

48. Defendant therefore learned at the same moment that Plaintiff was pregnant and that he is transgender.

**C. Defendant's Treatment of Plaintiff Changes Immediately**

49. Immediately after Plaintiff's disclosure, the behavior of Defendant's management and Plaintiff's co-workers toward him changed markedly for the worse.

50. Management and co-workers became cold and distant toward Plaintiff and alienated him in the workplace.

51. Plaintiff experienced alienation in the workplace that had not existed before Defendant learned of his pregnancy and transgender status.

52. As Plaintiff's pregnancy progressed, he required ordinary and reasonable workplace adjustments associated with pregnancy.

53. Among other things, Plaintiff needed access to bathroom breaks.

54. Plaintiff was repeatedly required to ask for bathroom breaks.

55. Plaintiff's requests were brushed off, delayed, or not addressed with the same routine responsiveness afforded to other employees.

56. Upon information and belief, employees who were not pregnant and/or who had not disclosed a transgender identity were permitted routine bathroom access without being subjected to comparable resistance or delay.

57. Plaintiff's need for bathroom access constituted, and/or placed Defendant on notice of, a known limitation related to pregnancy within the meaning of the PWFA.

58. Providing Plaintiff reasonable bathroom breaks would not have imposed an undue hardship on Defendant.

59. Defendant nevertheless failed to respond appropriately and reasonably to Plaintiff's pregnancy-related needs.

60. Defendant's discriminatory attitude was further reflected in its contradictory communications concerning Plaintiff's disclosure of his pregnancy.

61. When Plaintiff asked management about telling others of his pregnancy, management initially told him, "You can start telling people when you are ready."

62. Management subsequently reversed course and told Plaintiff, "Maybe you shouldn't tell anyone right now."

63. Upon information and belief, Defendant has not instructed cisgender female employees to conceal their pregnancies. Defendant's instruction to Plaintiff reflected its discomfort with a pregnant man and its reliance on stereotypes about who can and should become pregnant.

64. In context, that reversal reasonably communicated discomfort not merely with Plaintiff's pregnancy, but with the fact that Plaintiff was a pregnant transgender man.

65. Plaintiff reasonably understood these statements and Defendant's changed conduct as indicating that Defendant considered his pregnancy inappropriate, problematic, or something that should be concealed.

66. The statements were consistent with the broader change in Defendant's treatment of Plaintiff after management learned of his pregnancy and transgender identity.

**D. Plaintiff's Pregnancy-Related Leave**

67. Throughout his pregnancy, Plaintiff disclosed his pregnancy-related medical appointments to Defendant's management, which approved them.

68. Plaintiff's pregnancy became medically high-risk.

69. Defendant was aware of Plaintiff's pregnancy-related medical appointments and needs.

70. Plaintiff communicated with management concerning those appointments and related medical needs.

71. On November 10, 2025, Plaintiff submitted documentation from his physician stating that Plaintiff needed to begin maternity leave effective November 12, 2025 because of his high-risk pregnancy.

72. Defendant received the physician's documentation.

73. Defendant knew that Plaintiff's leave was necessitated by his pregnancy and pregnancy-related medical condition.

74. Defendant approved, accepted, and/or otherwise acknowledged Plaintiff's leave.

75. At no time when Plaintiff commenced leave did Defendant tell Plaintiff that taking leave would result in the loss of his position.

76. Nor did Defendant tell Plaintiff that it considered him to have resigned, abandoned his position, or otherwise ceased to be an employee.

77. To the contrary, Defendant's words and conduct affirmatively communicated that Plaintiff remained employed and was expected to return.

78. Plaintiff began his leave on November 12, 2025.

79. Plaintiff gave birth shortly thereafter. On November 20, 2025, he sent a birth announcement to the Center, which Defendant acknowledged on November 24, 2025.

80. Plaintiff's leave, and his time off for medical appointments, were reasonable accommodations of known limitations related to his pregnancy, childbirth, and related medical conditions, including a high-risk pregnancy and recovery from childbirth.

**E. Defendant Repeatedly Assures Plaintiff That His Job Is Secure**

81. While Plaintiff was on leave, Defendant's representatives repeatedly assured him that his position would be held.

82. During Plaintiff's leave, Defendant also suggested to Plaintiff that he would be eligible for unemployment compensation. Upon information and belief, that suggestion was misleading and reflected Defendant's intention not to return Plaintiff to work after the birth of his child.

83. On December 1, 2025, Plaintiff asked Defendant for written confirmation of his employment status.

84. On December 4, 2025, Defendant confirmed in writing that Plaintiff was on unpaid maternity leave.

85. On December 19, 2025, at a Center event that Plaintiff attended, multiple employees and representatives of Defendant told Plaintiff, "See you in a few weeks."

86. At no time before, during, or after Plaintiff's leave did Defendant inform Plaintiff that his job was in jeopardy or that Defendant intended to fill his position.

87. Defendant likewise did not tell Plaintiff that it intended to permanently replace him.

**F. Defendant Refuses to Reinstate Plaintiff to Work**

88. On January 2, 2026, Plaintiff contacted Defendant to confirm his return-to-work date.

89. On January 5, 2026, Defendant responded that Plaintiff's position had been filled during his absence and that no position was available for him.

90. The January 5 communication was the first time Defendant informed Plaintiff that his teaching position had been permanently filled or that Defendant would not permit him to return.

91. Plaintiff promptly followed up to seek clarification. Defendant did not respond.

92. Defendant has not returned Plaintiff to work or offered him any position.

93. Defendant's refusal to return Plaintiff to work after his approved leave constitutes a termination of his employment.

94. Upon information and belief, Defendant filled Plaintiff's position with an individual who is not pregnant and is not transgender.

95. Upon information and belief, Defendant has held positions open for, and returned to work, employees who took leave for reasons unrelated to pregnancy.

96. Defendant's stated reason for refusing to return Plaintiff to work is pretext for discrimination. Defendant terminated Plaintiff less than four months after learning that he was pregnant and transgender, and in direct response to his request to return from pregnancy-related leave.

**G. Defendant Advances a False and Inconsistent Explanation Concerning Childcare**

97. Defendant's treatment of Plaintiff was further complicated by representations concerning childcare for Plaintiff's newborn.

98. Defendant encouraged Plaintiff to seek childcare through an affiliated Goddard School infant room.

99. Plaintiff was told that staff members would receive priority for childcare placement.

100. In reliance upon those representations, Plaintiff applied for childcare at approximately the end of September or beginning of October 2025.

101. Plaintiff was subsequently informed that no childcare opening would be available until approximately the summer.

102. Plaintiff's childcare application was separate and distinct from his employment with Defendant.

103. Plaintiff did not submit that childcare application as an application for employment.

104. Plaintiff did not thereby resign his existing teaching position.

105. Plaintiff did not communicate through the childcare application that he did not intend to return from maternity leave.

106. Nevertheless, Defendant later characterized or treated Plaintiff's childcare application as though it were an employment application.

107. Defendant then suggested that the supposed "application" created uncertainty concerning whether Plaintiff intended to return to his existing position.

108. Defendant relied upon that purported uncertainty as justification for filling Plaintiff's position.

109. That explanation is contradicted by Defendant's own contemporaneous conduct and written communications.

110. Defendant knew that Plaintiff was on pregnancy-related leave.

111. Defendant expressly confirmed on December 4, 2025 that Plaintiff remained on "unpaid maternity leave."

112. Defendant's employees subsequently told Plaintiff on December 19, 2025 that they expected to see him "in a few weeks."

113. Defendant never asked Plaintiff whether he had resigned.

114. Defendant never informed Plaintiff that it interpreted any childcare-related communication as a resignation or expression of uncertainty regarding his return.

115. Defendant never provided Plaintiff an opportunity to correct the supposed misunderstanding before permanently filling his position.

116. Nor did Defendant warn Plaintiff that his position would be permanently filled unless he reconfirmed an intention to return.

117. Defendant's reliance upon the childcare application is therefore implausible, inconsistent with its contemporaneous statements, and indicative of pretext.

118. Upon information and belief, Defendant has since mischaracterized Plaintiff's childcare application as an application for employment, and has asserted that this created uncertainty about whether Plaintiff would return to work and required Defendant to fill his position.

119. That assertion is false and pretextual. Plaintiff never applied for other employment and never told Defendant that he would not return. Defendant's own written confirmation of Plaintiff's maternity leave, and its representatives' repeated assurances that his position would be held, contradict it.

**H. Defendant's Stated Reasons Are Pretextual**

120. Defendant's stated justification for refusing to reinstate Plaintiff is unworthy of credence.

121. Among other things:

a. Plaintiff had been permitted to take maternity leave;

b. Defendant knew why Plaintiff was absent;

c. Defendant received medical documentation supporting the leave;

d. Defendant never informed Plaintiff that he had resigned or abandoned his job;

e. Defendant expressly confirmed on December 4 that Plaintiff remained on unpaid maternity leave;

f. Defendant's representatives told Plaintiff on December 19 that they expected to see him in a few weeks;

g. Defendant never warned Plaintiff that his job was in jeopardy;

h. Defendant never informed Plaintiff that his childcare application created any uncertainty about his return;

i. Defendant nevertheless permanently filled Plaintiff's position while he was on pregnancy- and childbirth-related leave; and

j. Defendant disclosed that fact only after Plaintiff affirmatively contacted Defendant to arrange his return.

122. Defendant's shifting and internally inconsistent explanations support a reasonable inference that its asserted reasons were pretext for unlawful discrimination and/or retaliation.

123. Plaintiff's pregnancy, childbirth, transgender status/gender identity, sex, and/or sexual orientation were motivating factors in Defendant's treatment of Plaintiff and its decision to terminate, replace, and/or refuse to reinstate him.

124. Defendant's actions were also motivated, in whole or in part, by Plaintiff's requests for and use of pregnancy-related accommodations and leave.

### I. Plaintiff's Damages

125. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, emotional distress, humiliation, reputational harm, and other damages.

126. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights.

## VI. CLAIMS FOR RELIEF

### COUNT I
### Sex Discrimination (Gender Identity, Sex Stereotyping, and Sexual Orientation) in Violation of Title VII, 42 U.S.C. § 2000e-2(a)

127. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

128. Title VII makes it unlawful for an employer to discharge an individual, or otherwise to discriminate against an individual with respect to the compensation, terms, conditions, or privileges of employment, because of that individual's sex. 42 U.S.C. § 2000e-2(a)(1).

129. Discrimination because of an individual's transgender status or sexual orientation is discrimination "because of sex." *Bostock v. Clayton County*, 590 U.S. 644 (2020). So is discrimination based on an individual's failure to conform to sex stereotypes. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

130. Plaintiff is a transgender man and a member of the LGBTQ+ community, and is therefore protected by Title VII.

131. Title VII prohibits an employer from discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's sex.

132. Discrimination against an employee because the employee is transgender and/or because of the employee's sexual orientation constitutes discrimination because of sex under Title VII.

133. Plaintiff was qualified for his position as a preschool teacher.

134. Defendant subjected Plaintiff to adverse employment actions, including terminating him and refusing to return him to work on January 5, 2026, delaying and denying his requests for bathroom breaks, and instructing him to conceal his pregnancy.

135. Defendant took these actions because of Plaintiff's sex, including his gender identity, his nonconformity with sex stereotypes as a man who became pregnant, and his actual or perceived sexual orientation.

136. Defendant treated Plaintiff less favorably than similarly situated employees who are not transgender.

137. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above.

**COUNT II**
**Pregnancy Discrimination in Violation of Title VII, as Amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e(k), 2000e-2(a)**

138. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

139. Under the Pregnancy Discrimination Act, the terms "because of sex" and "on the basis of sex" in Title VII include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

140. Plaintiff was pregnant, gave birth, and experienced related medical conditions, including a high-risk pregnancy, during his employment with Defendant.

141. Defendant subjected Plaintiff to adverse employment actions, including terminating him and refusing to return him to work on January 5, 2026, delaying and denying his requests for bathroom breaks, and instructing him to conceal his pregnancy.

142. Defendant took these actions because of Plaintiff's pregnancy, childbirth, and related medical conditions, and treated Plaintiff less favorably than non-pregnant employees who were similar in their ability or inability to work.

143. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above.

**COUNT III**
**Failure to Accommodate in Violation of the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg-1(1)**

144. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

145. The PWFA makes it unlawful for a covered entity to fail to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee, unless the accommodation would impose an undue hardship on the operation of the covered entity's business. 42 U.S.C. § 2000gg-1(1).

146. Plaintiff was a "qualified employee" within the meaning of 42 U.S.C. § 2000gg(6), because he could perform the essential functions of his position with or without reasonable accommodation, and any inability to perform an essential function was temporary and could be reasonably accommodated.

147. Plaintiff had "known limitations" within the meaning of 42 U.S.C. § 2000gg(4), including the need for bathroom breaks, the need for time off for medical appointments, a high-risk pregnancy requiring leave, and recovery from childbirth. Plaintiff communicated these limitations to Defendant.

148. Plaintiff communicated pregnancy-related workplace needs to Defendant, including his need for bathroom breaks and, ultimately, medically necessary leave associated with his high-risk pregnancy.

149. Bathroom breaks were a reasonable accommodation that would not have imposed an undue hardship on Defendant.

150. Plaintiff repeatedly sought the opportunity to use the bathroom as necessitated by his pregnancy.

151. Defendant failed to provide that accommodation by routinely delaying and brushing off Plaintiff's requests for bathroom breaks.

152. Plaintiff's medically necessary leave likewise arose from his known pregnancy-related limitations.

153. Defendant received medical documentation establishing the need for such leave and acknowledged Plaintiff's leave as maternity leave.

154. To the extent Defendant contends that Plaintiff's leave or anticipated return created operational difficulties, Defendant failed to engage in the good-faith interactive process contemplated by the PWFA before permanently replacing Plaintiff.

155. Defendant never advised Plaintiff that an accommodation associated with his pregnancy or leave could not be provided because of undue hardship.

156. Defendant never meaningfully explored an effective alternative accommodation with Plaintiff before permanently filling his position.

157. Defendant's failure to provide reasonable accommodations and/or its denial of employment opportunities because of Plaintiff's need for pregnancy-related accommodation violated the PWFA.

158. Defendant approved leave as a reasonable accommodation, but then deprived Plaintiff of that accommodation by filling his position during the leave and refusing to return him to work at its conclusion.

159. Defendant did not engage in good-faith efforts to identify and make reasonable accommodations for Plaintiff.

160. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above.

**COUNT IV**
**Adverse Action, Denial of Employment Opportunities, and Retaliation in Violation of the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg-1(4)–(5), 2000gg-2(f)**

161. Plaintiff incorporates the preceding paragraphs as though fully set forth here.

162. The PWFA makes it unlawful for a covered entity to take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation. 42 U.S.C. § 2000gg-1(5).

163. The PWFA further makes it unlawful for a covered entity to deny employment opportunities to a qualified employee if the denial is based on the covered entity's need to make reasonable accommodations. 42 U.S.C. § 2000gg-1(4).

164. The PWFA also prohibits retaliation and makes it unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of rights protected by the statute. 42 U.S.C. § 2000gg-2(f).

165. Plaintiff requested and used reasonable accommodations, including bathroom breaks, time off for medical appointments, and leave beginning November 12, 2025.

166. Defendant took adverse action against Plaintiff and denied him employment opportunities by filling his position during his leave and terminating him and refusing to return him to work on January 5, 2026.

167. Defendant took these actions on account of Plaintiff's requests for and use of reasonable accommodations, as shown by, among other things, their timing in response to Plaintiff's request to return from leave, Defendant's prior assurances that his position would be held, and Defendant's shifting and pretextual explanations.

168. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered the damages described above.

**COUNT V**
**Title VII — Intersectional Sex Discrimination And Sex Stereotyping**

180. Plaintiff incorporates by reference paragraphs 1 through 179 as though fully set forth herein.

181. Title VII prohibits discrimination based upon sex stereotypes and employment decisions in which sex is an unlawful motivating factor.

182. Plaintiff's circumstances implicated overlapping and inseparable sex-based characteristics: Plaintiff is a transgender man who became pregnant and gave birth.

183. Defendant learned of Plaintiff's pregnancy and transgender status contemporaneously.

184. Defendant's treatment of Plaintiff changed materially thereafter.

185. Defendant's subsequent treatment—including discouraging Plaintiff from disclosing his pregnancy, resisting pregnancy-related needs, replacing Plaintiff during maternity leave despite assurances that he remained employed, and refusing to reinstate him—supports a reasonable inference that Defendant acted because Plaintiff did not conform to Defendant's expectations, assumptions, or stereotypes concerning sex, gender, pregnancy, and parenthood.

186. Defendant treated Plaintiff's pregnancy as a transgender man less favorably than it would have treated materially similar pregnancy and childbirth circumstances absent Plaintiff's transgender status and/or nonconformity with sex-based expectations.

187. Plaintiff's sex, pregnancy, transgender status/gender identity, and associated nonconformity with sex stereotypes were motivating factors in Defendant's adverse treatment of him.

188. Defendant thereby discriminated against Plaintiff because of sex in violation of Title VII.

189. As a direct and proximate result, Plaintiff suffered the damages alleged herein.

**COUNT VI.**
**Willfulness and Damages**

190. Plaintiff incorporates by reference all preceding paragraphs.

191. Defendant's conduct was intentional, malicious, reckless, and/or undertaken with reckless indifference to Plaintiff's federally protected rights.

192. Defendant knew that Plaintiff was pregnant.

193. Defendant knew that Plaintiff required medically necessary leave because of a high-risk pregnancy.

194. Defendant expressly acknowledged Plaintiff as an employee on maternity leave.

195. Defendant nevertheless permanently replaced Plaintiff without warning while continuing to represent that he remained employed and would return.

196. Defendant thereafter advanced explanations that were inconsistent with its own contemporaneous communications.

197. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer loss of wages, employment benefits, earning capacity, professional opportunities, and other economic losses.

198. Plaintiff has additionally suffered emotional distress, humiliation, embarrassment, inconvenience, loss of dignity, reputational harm, and other non-economic injuries.

199. Plaintiff is entitled to all legal and equitable remedies available under applicable law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Drew Zelikman respectfully requests that this Court enter judgment in his favor and against Defendant on all Counts, and award the following relief:

a) A declaration that Defendant's conduct violated Title VII and the PWFA;

b) Reinstatement to Plaintiff's former position with full seniority and benefits, or front pay in lieu of reinstatement;

c) Back pay and the value of lost benefits, with prejudgment interest;

d) Compensatory damages for emotional distress, humiliation, reputational harm, and other non-economic losses;

e) Punitive damages;

f) Injunctive relief requiring Defendant to adopt, implement, and train its managers on policies prohibiting discrimination on the basis of sex, gender identity, sexual orientation, and pregnancy, and on procedures for providing reasonable accommodations under the PWFA;

g) An additional award to offset any adverse tax consequences of a lump-sum award of back pay or front pay;

h) Reasonable attorneys' fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 2000gg-2(a);

i) Post-judgment interest; and

j) Such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and 42 U.S.C. § 1981a(c), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**LEESON & LEESON**

By: *//s// Joseph F. Leeson, III*____
Joseph F. Leeson, III, Esquire
Pa. Attorney I.D. No. 328520
70 East Broad Street
Bethlehem, PA 18018
Tel.: (610) 691-3320
Email: jleeson@leeson-law.com

*Attorney for Plaintiff, Drew Zelikman*

Dated: October 9, 2026

# EXHIBIT A

EEOC Determination and Notice of Rights
Charge No. 530-2026-03317, issued July 13, 2026

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/13/2026

**To:** Mr. Drew Zelikman
639 Walnut Avnue Apartment 2
West Easton, PA 18042

Charge No: 530-2026-03317

EEOC Representative and email: Legal Unit Representative
267-589-9707

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2026-03317.

On behalf of the Commission,

Digitally Signed By:Karen McDonough
07/13/2026
Karen McDonough
Deputy Director

**Cc:**
NA NA
3790 West Drive
Center Valley, PA 18034

Michele L Weckerly
Salmon Ricchezza Singer & Turchi
1601 Market street Suite 2500
Philadelphia, PA 19103

Joseph F Leeson, III Esq.
Leeson & Leeson
70 E. Broad Street 70 East Broad St.
Bethlehem, PA 18018

Please retain this Notice for your records.

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court* ***under Federal law****. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 530-2026-03317 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 530-2026-03317 to the District Director at Karen McDonough, 801 Market St Suite 1000, Philadelphia, PA 19107.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.